IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-01933-CNS-NRN

BRIAN SMITH and
SMITH VENTURES, LTD.,

    Plaintiffs,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Defendant.

## ORDER

Before the Court is Plaintiffs' partial summary judgment motion, filed in December 2024. ECF No. 27. Defendant responded on May 7, 2025, ECF No. 51, and Plaintiffs replied on May 21, 2025, ECF No. 52. In August 2025, Defendant filed an unopposed motion "requesting [an] affirmative ruling on Plaintiffs' motion for partial summary judgment," ECF No. 61 at 1, and seeking leave to file an additional round of briefing so the Court could "determine whether coverage exists under the Policy," *id.* 2. The Court granted Defendant's unopposed request, permitting Defendant to file a sur-reply and Plaintiffs to file a response to Defendant's sur-reply. ECF No. 63.

After considering the parties' briefs, including Defendant's sur-reply and Plaintiffs' response to Defendants' sur-reply, *see* ECF Nos. 64–65, the Court GRANTS Plaintiffs' partial summary judgment motion to the extent it seeks a "find[ing] that Plaintiffs'

1

settlement of $137,000 is covered by [Defendant's] insurance policy," ECF No. 27 at 20, as well as a finding that Plaintiffs' defense costs are also covered under the insurance policy. *See also* ECF No. 61 at 2 ("Defendant requests the Court to treat the briefing . . . as a request by the Parties to determine whether coverage exists under the Policy."). In doing so, the Court presumes familiarity with this case's factual and procedural background, the parties' summary judgment briefing and attendant evidentiary submissions, including the insurance policy at issue in this case (the Policy), and the legal standard governing Plaintiffs' partial summary judgment motion in this insurance dispute. *See, e.g.,* Fed R. Civ. P. 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986).

### A. Employment Practices Act & Loss

As a preliminary matter, the parties appear to dispute whether the employees' claims constitute an "Employment Practice Act" under the Policy. *Compare* ECF No. 27 at 7, *with* ECF No. 64 at 4–5. However, although Defendant argues civil theft, "in and of itself . . . does not constitute an Employment Practices Act," *id.*, it elsewhere "agrees that the allegations for unpaid commissions in the [underlying litigation] *could be* construed as an Employment Practices Act," ECF No. 51 at 7 (original emphasis). Proceeding from this premise, Defendant argues that regardless, "the Policy's insuring agreement is subject to applicable exclusions in the Policy," *id.*, and that based on those exclusions it is not required to provide coverage to Plaintiffs for the underlying litigation.

Given Defendant's acknowledgment that allegations in the underlying litigation could constitute an Employment Practices Act in its briefing as well as in its May 4, 2022, reservation of rights letter, the Court concludes that claims in the underlying litigation are

premised on "Employment Practice Act[s]" as set forth in the Policy. *See* ECF No. 27-2 at 8 ("In light of these provisions, it appears that a Claim for an Employment Practices Act, as defined by the policy, has been made."). Indeed, the gravamen of Defendant's summary judgment arguments concern the applicability of the Policy's *exclusions*, rather than the threshold matter of what does or does not constitute an "Employment Practice Act." ECF No. 51 at 7. However, to the extent that Defendant argues Plaintiffs' civil theft claim does not constitute an "Employment Practice Act," *see* ECF No. 64 at 4–5, the Employee Practice Act provision contemplates "actual or alleged . . . breach of a written or oral employment contract," *and* "employment related misrepresentation," ECF No. 27-1 at 41. The Court agrees with Plaintiffs that, reading the employees' underlying complaint, the civil theft claim is premised on commission misrepresentations, placing the claim squarely under the Policy's Employment Practice Act "misrepresentation" provision.

For substantially similar reasons, the Court concludes that—entirely consistent with Defendant's briefing—that Plaintiffs have shown a "Loss" occurred under the Policy, such that it is appropriate to turn to whether the Policy's exclusions compel the denial of coverage. *See id.* ("Based on the allegations in the Complaint filed in the Employee Litigation, a Loss, *as defined in the Policy*, was claimed by the Employees for unpaid wages.") (emphasis added). Further, the Court agrees with Plaintiffs that the "Loss" they suffered includes payment of the employees' attorney fees, damages multipliers, and non-economic damages, *see, e.g.,* ECF No. 27 at 8, in addition to the base, economic damages amount for settlement of the employees' claims. Inclusion of payment for attorney fees and multipliers is entirely consistent with the Policy's plain language, given

3

these payments are part of the settlement paid by Plaintiffs to the employees. *See* ECF No. 27-1 at 47 (defining "Loss" as "Damages"); *id.* at 45 (defining "Damages" to include "any monetary judgment . . . or monetary settlement, including the punitive, exemplary or multiple portion of any judgment"). *See also UnitedHealth Grp. Inc. v. Hiscox Dedicated Corp. Member Ltd.*, No. 09-CV-0210 (PJS/SRN), 2010 WL 550991, at *11 (D. Minn. Feb. 9, 2010) ("Nothing in the definition of 'Damages' excludes a claim for attorney's fees from being part of a judgment or settlement.").

### B. Indemnification & Exclusions' Application

The parties dispute whether coverage exclusions in the Policy apply. *Compare, e.g.,* ECF No. 27 at 12, *with* ECF No. 51 at 7. Discussed below, their exceptions trigger coverage. Accordingly, the Court proceeds with its analysis of the Policy under Colorado law and Exclusions B, D, and E, as well as their exceptions. *See U.S. Specialty Ins. Co. v. Est. of Earley*, 680 F. App'x 767, 769 (10th Cir. 2017).

#### 1. Exclusion B & Exception

Plaintiffs contend that a parenthetical clause contained in Exclusion B constitutes an exception to the exclusion of coverage. *See* ECF no. 27 at 11; ECF No. 52 at 7. The relevant Policy provision provides:

> B. for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**; provided, further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay **Earned Wages**, or (ii) any **Claim** seeking **Earned Wages** because any **Employee(s)** or purported **Employee(s)** were improperly classified or mislabeled as "exempt."

ECF No. 27-1 at 64. And under the Policy, "Earned Wages means wages or overtime pay for services rendered." *Id.* Based on these provisions—specifically, the parenthetical phrase "(as opposed to tort-based back pay or front pay damages)"—Plaintiffs contend that Defendant is obligated to provide coverage for the underlying settlement. *See, e.g.,* ECF No. 52 at 4 ("Exclusion B avoids coverage for 'earned wages,' but *exception* B restores coverage for 'tort-based back pay'" (emphases omitted)).

Central to the parties' dispute is whether the commissions in the underlying litigation constitute "Earned Wages" as defined in the Policy. *Compare* ECF No. 51 at 8, *with* ECF No. 51 at 7; *and* 52 at 4. Because, as Plaintiffs observe, if commissions constitute "Earned Wages," they are not covered. *See* ECF No. 27-1 at 64. The Court agrees with Plaintiffs that the underlying commissions are not "Earned Wages" as defined in the Policy. The "Earned Wages" provision does not contemplate "commissions." The Court rejects Defendant's contrary argument that the commissions are "Earned Wages"— and therefore fall under Exclusion B's exclusionary clause—given that the commissions are neither "overtime" nor "wages." *Cf. Commission,* Black's Law Dictionary (12th ed.

5

2024) ("A fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction.").

To the extent Defendant directs the Court to statutory definitions for wages and commissions, *see* ECF No. 51 at 8, these *statutory* provisions cannot erase the Policy's own unambiguously limited definition for "Earned Wages." *See, e.g., Smith v. State Farm Mut. Auto. Ins. Co.*, 399 P.3d 771, 776 (Colo. App. 2017). Indeed, there is nothing in the Policy indicating that Defendant intended its plain terms, "wages and overtime pay," to carry statutory definitions. *See id.*; *see also Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004) ("Where general language in an insurance contract is undefined or is otherwise ambiguous, we construe it against the insurer and interpret it according to its plain and ordinary meaning." (citation omitted)). And absent this indication, the Court turns to other sources, such as dictionaries, *see Colorado Access v. Atl. Specialty Ins. Co.*, No. 21-cv-02913-NYW, 2023 WL 2042245, at *8 (D. Colo. Feb. 16, 2023), that confirm "back pay" is broadly defined as "pay that is unpaid but due," *Int'l Union of Operating Eng'rs, Stationary Eng'rs, Loc. 39 v. Nat'l Lab. Rels. Bd.*, 127 F.4th 58, 93 (9th Cir. 2025) (Bumatay, J., dissenting). *See also id.* (defining "'back pay' as an 'arrears of a pay'") (quoting A Dictionary of Modern American Usage at 17 (1935)); *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1283 (5th Cir. 1994) ("[T]he term 'back pay' connotes a remedy that would require the payment of a sum such that the employees would be put in the same position they would have been had the violation never occurred.").

Finally, for Exclusion B's exception to apply, Plaintiffs' claims for back pay—i.e., commissions—must be "tort-based." ECF No. 27-1 at 64. They are. As Plaintiffs observe, employees in the underlying litigation asserted a claim for civil theft against Plaintiffs, ECF No. 27-5 at 10, which is a tort claim under Colorado law. *See, e.g., Mockelmann v. Mockelmann*, 121 P.3d 337, 338 (Colo. App. 2005) ("[Appellant] further contends that he is entitled to assert independent civil claims for theft and *related torts*.") (emphasis added); *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1157 (Colo. 2019). Defendant, in its sur-reply, admits as much. *See* ECF No. 64 at 4 ("[C]ivil theft is a tort claim."). And, contrary to Defendant's argument, *see id.*, the allegations attendant to the employees' civil theft claim do not obviate the fact that a tort claim—here, civil theft—is, axiomatically, tort-based. At bottom, under an ordinary construction of the term, the employees sought back pay—in the form of commissions—and the remedy they sought was based on the tort of civil theft—tort-based.

Notably, the exception's plain language does not demand that the employees' claims must *be* tort claims, only that any back pay be "tort-based." ECF No. 27-1 at 64. And Defendant's effort to avoid coverage under Exclusion B because it "was not intended to grant coverage for any type of tort claim," ECF No. 64 at 5, amounts to an impermissible invitation to consider extrinsic material as to what was "intended" in the exclusion. The Court declines this invitation, given the plain language of Exclusion B and the Policy, and the narrow construction it must accord the Policy's Exclusions. *Smith v. State Farm Mut. Auto. Ins. Co.*, 399 P.3d 771, 773 (Colo. App. 2017) ("We will enforce the policy as written, unless there is an ambiguity in the policy language." (citation omitted); *Cont'l W. Ins. Co.*

7

*v. Shay Const., Inc.*, 805 F. Supp. 2d 1125, 1128 (D. Colo. 2011) ("Exclusions and limitations on coverage are to be given a narrow construction." (citation omitted)).

Accordingly, and for the reasons set forth above, Defendants have not shown that Exclusion B avoids coverage. *See McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 523 (Colo. App. 2004) ("The insurer therefore has the burden of demonstrating that the policy exclusion applies in the particular circumstances at issue and that it is not susceptible of any other reasonable interpretation." (citation omitted)). Regardless, Plaintiffs have shown that Exclusion B's exception applies, *see, e.g., Rodriguez By & Through Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991), and that coverage exists under it.

### 2. Exclusion D & Exception

As with Exclusion B, the parties dispute whether Exclusion D and its exception "restores coverage." ECF No. 27 at 14; ECF No. 51 at 9–10. The Court agrees with Plaintiff that Exclusion D does not avoid coverage for Plaintiffs' underlying litigation payments.

Exclusion D provides that the "Underwriter shall not be liable under this [provision] to make any payment for Loss in connection with any Claim made against the Insured,"

> D. arising out of, based upon or attributable to obligations or payments owed under (i) an express (written or verbal) contract of employment, (ii) an agreement to make payments in the event of the termination of employment, or (iii) an agreement to assume another's liability; however, this exclusion does not apply to any of the following:
>
> 1. liability of the **Private Company** which would have attached even in the absence of such contract or agreement; or

8

ECF No. 27-1 at 42. It further provides that its exclusion of coverage "does not apply . . . [to] Defense Costs." *Id.*

As a preliminary matter, Plaintiff argues that Exclusion D does not avoid coverage since "it conflicts with a definition providing coverage in the Insuring Agreement." ECF No. 27 at 13. The Court need not address this argument or Defendant's response to it because, *see* ECF No. 51 at 10, the Court agrees with Plaintiffs that Exclusion's exception on its face restores coverage, *see* ECF No. 27 at 14.

Exclusion D provides an exception where Defendant's liability "would have attached even in the absence of such contract [of employment] or agreement." ECF No. 27-1 at 2. As Plaintiffs observe, this is essentially a provision restoring coverage for underlying tort liability. *See* ECF No. 27 at 14. And as discussed above, that's a basis for Plaintiffs' underlying liability: the employees' tort claim. Other courts, confronted with substantially similar policy language and underlying claims, have concluded such language, under substantially similar doctrinal frameworks, does not avoid coverage where underlying claims include torts claims. *See, e.g., Admiral Ins. Co. v. Rio Grande Heart Specialists of S. Texas, Inc.*, 64 S.W.3d 497, 502 (Tex. App. 2001) (declining to preclude coverage where "policy state[d] that it does not apply to any 'claim for liability . . . under any contract or agreement, either oral or written, unless such liability would have attached . . . even in the absence of such contract or agreement,' and party alleged "duty of good faith" claim that "would have arisen even *absent* a contract" and individuals "made representations . . . without taking the proper level of care to insure [their] accuracy"); *Am. Cas. Co. v. Timmons*, 352 F.2d 563, 568 (6th Cir. 1965) ("[A party] would have been liable

9

for negligence in the absence of contractual liability."); *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 727 (5th Cir. 1999) ("When, as here, liability could be imposed pursuant to either a contractual indemnity provision or a generally applicable legal principle, the contractual liability exclusion will not bar coverage.").

The Court finds the reasoning of these cases persuasive. Consistent with them—and the plain language of Exclusion D and its exception—the absence of contract/tort provision in Exclusion D restores coverage for Plaintiffs' underlying losses. Especially given the employees' civil theft claim was *not premised* on a breach of contract, and the elements for a civil theft claim under Colorado law do not demand any breach of contract. *Compare* ECF No. 27-5 at 8; *and PurCo Fleet Servs., Inc. v. Koenig*, 240 P.3d 435, 438 (Colo. App. 2010) (setting forth breach of contract elements), *with id.* at 10; *and In re Est. of Chavez*, 520 P.3d 194, 204 (Colo. App. 2022), *as modified on denial of reh'g* (Aug. 25, 2022) (setting forth elements civil theft elements). Colorado courts have made this point explicitly. *See, e.g., Forest City Stapleton Inc. v. Rogers*, 2017 CO 23, ¶ 13, 393 P.3d 487, 491 (Colo. App. 2017) ("[C]ontract claims require different proof than tort claims and should be treated separately." (citation omitted)).*

---

* Although neither party addresses the issue, the Court notes that the duty giving rise to the employees' civil theft claim—paying commissions, which Plaintiffs were also required to do under the Wage Act's statutory provisions—appears also to be independent of any contractual duty to pay commissions, bolstering the Court's conclusion that Exclusion B's exception restores coverage for the underlying litigation, where the employees asserted a civil theft claim. *See, e.g., JW Const. Co. v. Elliott*, 253 P.3d 1265, 1270 (Colo. App. 2011) ("Statutory systems may *create* tort liability.") (original emphasis); *Miller v. Bank of New York Mellon*, 379 P.3d 342, 346 (Colo. App. 2016) ("The source of a tort duty may originate from a judicial decision or a legislative enactment." (citation omitted)). Of course, any *duty* that arises from a "legislative enactment," *id.*, does not render a tort claim, such as civil theft, doctrinally duplicative of a statutory wage claim, such that in this case the employees' assertion of a Wage Act claim swallows or obviates their separate, *tort-based* civil theft claim.

10

Accordingly, for the reasons set forth above, the Court rejects Defendant's argument that Exclusion D precludes coverage. *See, e.g.,* ECF No. 51 at 10. Regardless of whether Exclusion D applies, Plaintiffs have shown the exception applies. Accordingly, the Court concludes that Exclusion D's exception restores coverage.

### 3. Exclusion E & Exception

Finally, the parties dispute whether the exception to Exclusion E triggers coverage under the Policy. *Compare* ECF No. 27 at 10, *with* ECF No. 51 at 10. The Court agrees with Plaintiffs that the exception to Exclusion E provides coverage for Plaintiffs' losses.

Exclusion E provides:

> E. to the extent such **Loss**, other than **Defense Costs**, constitutes employment-related benefits, stock options, perquisites, deferred compensation, payment of insurance, or any other type of compensation earned by the claimant in the course of employment or the equivalent value thereof; however, this exclusion shall not apply to front pay or back pay;

ECF No. 27-1 at 43. Explained above in the Court's analysis of Exclusion B, the underlying loss concerned the payment of back pay to the employees. Accordingly, notwithstanding Defendant's failure to show Exclusion E precludes coverage, Plaintiffs have nonetheless met their burden of showing that the exception to Exclusion E restores coverage for their underlying settlement loss attendant to the employees' claims.

\* \* \*

For the reasons set forth above, Plaintiffs' $137,000 settlement for the underlying employment litigation is covered under the Policy.

11

## C. Defense Costs

The parties dispute whether, under the Policy, Plaintiffs are entitled to recover their costs in defending the employees' underlying litigation. *Compare* ECF No. 27 at 15, *with* ECF No. 51 at 10. Summarizing the parties' positions, central to this dispute is whether Plaintiffs' settlement payment satisfies the Policy's retention amount, such that Plaintiffs are then entitled to coverage for their $19,682 in defense costs. The Court agrees with Plaintiffs that their defense costs are covered under the Policy.

To be sure, Defendants correctly observe, and Plaintiffs agree, the Policy sets forth a $25,000 retention for "each [Employment Practices] Claim." ECF No. 27-1 at 12. But as Plaintiffs observe, this retention provision does not "state that only defense costs satisfy this retention." ECF No. 27 at 16. Instead, the retention provision falls under the Policy's general statement that "[t]he amounts incurred for defense cost[s] shall be applied against the retention." ECF No. 27-1 at 12 (capitalization omitted). Application of defense costs against the retention does not amount to a limitation on whether *only* certain categories of defense costs are applied against the retention. Especially where elsewhere in the Policy, "Loss" is defined to include "Defense Costs," which are themselves defined as "any reasonable and necessary legal fees and expenses incurred in the defense of a Claim." ECF No. 27-1 at 46–47. And the exceptions to covered "Defense Costs" are inapplicable, given the nature of the employees' underlying litigation. *See id.* at 46 (providing three exceptions where "any other insurer has a duty to defend," "salaries, wages, overhead or benefit expenses . . . associated with any Insured" are involved, or "salaries, wages, overhead or benefit expenses . . . associated with employees of the

12

Underwriter" are involved). To the extent these exceptions create an ambiguity to the Defense Costs provision, the Court must construe these provisions narrowly and in favor of coverage. *See TCD, Inc. v. Am. Fam. Mut. Ins. Co.*, 296 P.3d 255, 257–58 (Colo. App. 2012) ("[Courts] construe coverage provisions in an insurance contract liberally in favor of the insured to provide the broadest possible coverage." (citation omitted)).

Defendant's citation to other Policy language limiting Defendant's liability "for [only] that portion of Defense Costs which is in excess of the Wage & Hour Retention" ECF No. 27-1 at 27, fails to persuade, given that this—like the provision discussed above—does not specifically exclude the defense and settlement costs Plaintiffs incurred, and their defense and settlement costs exceeded $25,000. *See also* ECF No. 64 at 6. So too is the Court unpersuaded by Defendant's argument that "[t]here is no grant of coverage for civil theft in the insuring agreement nor for any damages flowing from civil theft including non-economic damages, multiplier damages, and attorney's fees." ECF No. 64 at 6. Fundamentally, this argument attempts to read *out of* or *narrow* the Policy provisions that, discussed above, provide or restore coverage for the settlement of the employees' underlying claims. The Court cannot—and will not—engage in what is essentially a revision of the Policy's plain language. Regardless, because Plaintiffs have shown they are entitled to coverage under Exclusions B, D, and E, their settlement payment exceeds the retention and entitles Plaintiffs to coverage for their defense costs. *Thompson*, 84 P.3d at 502 ("Once the duty to defend has been established, then the insurer must defend its insured unless an exclusion in the insurance policy precludes coverage." (citation omitted)).

At bottom, reading the Policy in its entirety, including its definition for "Defense Costs" and the Exclusions discussed above, the Court concludes that the Policy's retention could be—and was—satisfied by Plaintiffs' settlement payment. Accordingly, the Policy provides coverage for Plaintiffs' $19,682 defense costs.

* * *

The parties requested a "determin[ation] whether coverage exists under the Policy." ECF No. 61 at 2; *see also* ECF No. 62 at 3. The Court's analysis satisfies that request. Accordingly, and given the parties submitted this request following their initial round of summary judgment briefing, to the extent Plaintiffs seek relief beyond this determination the Court declines to grant such relief. Taking the parties' at their word, *see id.*, the Court has determined, as discussed above, that coverage exists under the Policy for the full amount of the underlying settlement and the amount of Plaintiffs' defense costs.

Consistent with the above analysis, Plaintiffs' partial summary judgment motion, ECF No. 27, is GRANTED to the extent Plaintiffs seek a determination regarding the Policy's coverage of the underlying settlement and defense costs.

DATED this 11th day of September 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge